Leonard Leigh Finz, J.
This opinion is addressed to a procedure that is both novel and unique. In general, it relates to the protection of the rights of an infant in connection with the settlement and compromise of an infant’s claim. More specifically, it is addressed to those matters in which an infant is without counsel, in which event the papers submitted for the compromise and settlement of an infant’s claim are prepared by an insurance company attorney, whose interests would appear to be adverse to those of the infant claimant.
In the matter giving rise to this writing, the basic facts are these: A three-year-old infant was taken by her mother to the home of a relative for an overnight visit. There was, upon the premises, a German shepherd dog belonging to a member of the household. As stated by the mother of the infant, in her petition in support of an application seeking a court order for approval of the compromise and settlement of her infant’s claim, “ This dog had been to our house on prior occasions and had never bitten anyone previously. The dog knew my children and my children had played with this dog on several occasions before * * * On the date of the occurrence *39 * * * my children went to play with the dog. There were four children in all petting the dog, among them was my daughter, Jean Marie (the infant herein) who was petting the dog on the head when suddenly the dog jumped up for her face and bit her on her right cheek. I saw blood on her face and I called my doctor ”.
Thereafter, the infant, through her mother, instituted a claim against the owners of the dog. Subsequently, the insurance company claims adjuster representing the owners agreed to a settlement of the infant’s claim directly with the infant’s mother who was without counsel. In accordance with the procedures set forth in CPLR 1207 and 1208, the necessary papers for the compromise of the proposed infant’s settlement were prepared by an attorney retained by the subject insurance company.
The infant, the infant’s mother, and the insurance company attorney appeared before this court for the purpose of having the infant and her mother examined toward having this court approve the settlement entered into between the insurance company and the infant’s mother.
During the oral examination conducted by this court, it became apparent that the proposed settlement, which was in the sum of $2,000, would have to be reviewed within the framework of the liability issues involved. That is, the proposed settlement sum of $2,000 could be considered acceptable and in the best interests of the infant, if, in fact, the issue of liability was unfavorable to the infant. Conversely, the approval of the proposed settlement would be withheld if the liability questions appeared more favorable to the infant than would appear from the general discussions conducted. In this connection, the affidavit of the insurance company attorney (whose conduct it should be noted was, throughout, of the highest candor and integrity) stated that “ Tour deponent expresses no opinion herein concerning the proposed settlement.”
Under the circumstances, it appeared to this court that the proposed settlement, the fairness and reasonability of which would turn upon an examination of a serious question of liability, required further investigation and study. As such and in accordance with the inherent powers of this court to do justice and to protect the infant’s rights, this court inscribed the following directive on the “ compromise ” papers then submitted : ‘ ‘ This Court has examined the infant and mother on this date. The infant displays a faint cosmetic scar on the cheek of her face. In the interests of justice and in the interests of the infant involved, this Court appoints Jack Hunter, Esq., of *40 Jamaica, New York, to submit to this Court a sealed report addressed to the question of liability after necessary investigation is made. All parties and the insurance company involved are directed to cooperate with Mr. Hunter who shall submit a report to this Court. Upon receipt, this Court shall consider the matter of execution of the proposed order of compromise. The fee of the appointed referee shall be paid by the subject insurance company in an amount not to exceed $200.00. Signed, L. Finz, J.O.O.”
Adhering to the order of the court, an in-depth report was submitted by the named Referee and received by the court. The report detailed the investigation conducted, the witnesses examined, and the conclusions reached.
It is on the basis of the Referee’s report received and filed that this court can now determine whether the proposed settlement should be approved and the order signed. Since it appears that the subject dog did not, on prior occasions, demonstrate “ a propensity to do any act which might endanger another ” (Lagoda v. Dorr, 28 A D 2d 208), the application seeking approval of the proposed settlement is granted. This determination is made by the court in view of the difficult liability issues that the infant would have to overcome. In essence, the interests of the infant would best be served by an approval of the proposed settlement.
Accordingly, the attorney for the insurance company is directed to submit a new order of compromise, reciting therein the Referee’s report, which may now be released, setting forth therein a provision for the payment of the Referee’s fee which, based upon the Referee’s affidavit of services performed, shall be fixed in the sum of $200.
. By reason of its co-operative posture and its consent to pay the fee of the Referee, the subject insurance company has evidenced its agreement to a procedure which to this court’s knowledge and experience has heretofore never been employed — a procedure which the Legislature should consider incorporating into the machinery of CPLR 1207 and 1208. Such legislative action if adopted would be consistent with fair play and the public interest, while at the same time, it would be responsive to the basic needs in furthering the highest traditions of the administration of justice.